IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| Carrie Schmidt *et al* | | |
| | Plaintiff | Case No. 2:25-cv-02081 |
| v. | | |
| | | **PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR INJUNCTIVE RELIEF** |
| Brian Huff, *et al* | | |
| | Defendants | |

INTRODUCTION

Plaintiff Carrie Schmidt (Carrie) is a longtime resident of Johnson County Kansas. Her children K.S. and P.S. have been enrolled in the Johnson County Kansas Gardner Edgerton School District (USD 231) since the beginning of the 2012-2013 school year. K.S. is on the wrestling team and will graduate this year. P.S. is a Sophomore. Carrie has been an active and valued volunteer in the school community. More recently, Carrie became a member of the USD 231 Educational Services Advisory Committee which investigates and reviews USD 231 curriculum, instruction, and assessment topics as well as reviews the accreditation process, progress, curriculum standards and Federal Programs. Carrie has also been a vocal critic of the Board of Education both in emails and during public Board meetings. She has criticized their handling of school curriculum, the book review process, as well as the books currently available to students in the school library. Carrie has also confronted USD 231 regarding President Trump's January 29, 2025, "ENDING RADICAL INDOCTRINATION IN K-12 SCHOOLING" Executive Order. The online X account of Libs of TikTok published several stories on Carrie's experiences with the School Board meetings and specifically Board Member Greg Chapman's statement that Carrie got sexual "pleasure" from reading excerpts from the school's library

1

books and his request to spam individuals who contacted him about the book issues Carrie raised. Libs of TikTok then published on February 7, 2025, a photo from the high school hallway of the classroom's window. Superintendent Huff confronted Carrie that same day about the X posting wanting to know who gave that photo to Libs of TikTok. Four days later the defendant Huff emailed Carrie claiming she was in areas "off limits to parents." Huff claimed "threatening messages" were sent by "members of the page." Huff commented that "staff are apprehensive of being the next one for you to call out and make miserable." Huff demanded a comprehensive response the same day by 4:00 p.m. saying he was "crafting a letter addressing the issues." Superintendent Huff then sent a letter later that afternoon claiming that Carrie had violated six school policies. He said that Carrie "took several pictures of classrooms, offices and other areas in the school building to include a picture of the classroom door of a teacher, which was then posted on social media. The taking and posting of this picture was done without the permission and consent of the teacher or the school district and is in contravention of Board policies including Board Policy KGB, KBC, KGD, KGDA, KFD & KM and state law." Huff said that "Given your prior experience with social media postings and the resultant threats, harassment, intimidation and disruption, your present conduct was clearly intentional and designed to bully, intimidate and harass the teacher and others, including students, within the district."

Superintendent Huff then banned Carrie from not only all USD 231 property, he banned her from any other school district property in which he characterized as

"school events or activities." Defendant Huff also told Carrie "at no time are you to have any contact with Hanna Louvau." Defendant Huff has relegated Carrie to no in person parent/teacher conferences and continues to ban Carrie from attending K.S.'s Graduation Commencement Ceremony on May 17, 2025. Superintendent Huff's ban order encompasses all activities of third parties who lease USD 231 property such as churches, as well as prohibiting Carrie from attending or speaking at USD 231 open meetings.

## ARGUMENT

To obtain a preliminary injunction, a moving party must demonstrate: "(1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." *Pryor v. Sch. Dist. No. 1,* 99 F.4th 1243, 1250 (10th Cir. 2024). In this case, Ms. Schmidt. satisfies all of the elements required for preliminary injunctive relief.

A. **Ms. Schmidt Has a Substantial Likelihood of Success on the Merits**

The "First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Tachias v. Los Lunas Sch. Bd. of Educ.,* 2022 U.S. Dist. LEXIS 193054 at *19 (10th Cir. October 24, 2022). It is well settled law that "any form of official retaliation for exercising one's freedom of speech, including prosecutions, threatened prosecution, bad faith investigations, and legal harassment, constitutes an infringement of that freedom." *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). To establish a claim for First Amendment retaliation, a plaintiff succeeds when the following is proven: ("1) that

3

the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Pryor v. Sch. Dist. No. 1,* at fn 2 (quoting *Klen v. City of Loveland*, 661 F.3d 498, 508 (10th Cir. 2011)).

Carrie suffers irreparable harm absent an injunction because the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese v. Cuomo*, 141 S. Ct. 63, 67 (2020). Finally, the last two factors merge when the opposing party is the government, *Denver Homeless out Loud v. Denver,* 32 F.4th 1259, 1278 (10th Cir. 2022), and injunctions "protecting the core First Amendment right of political expression" serves the public interest, *Homans v. City of Albuquerque,* 264 F.3d 1240, 1244 (10th Cir. 2001).

## Argument

The Superintendent Brian Huff's cites five USD 231 policies (KGB, KBC, KGD, KGDA, KFD & KM) in his letter. ECF 4-1 (Ex. A Ban Letter). Defendant Huff claims the following was "in contravention" of those policies because Carrie:

> took several pictures of classrooms, offices and other areas in the school building to include a picture of the classroom door of a teacher, which was then posted on social media. The taking and posting of this picture was done without the permission and consent of the teacher or the school district.

Superintendent Huff then implicates Carrie's actions prior to the events above:

> Given your prior experience with social media postings and the resultant threats, harassment, intimidation and disruption, your present conduct was clearly

4

intentional and designed to bully, intimidate and harass the teacher and others, including students, within the district.
Ex. A.

When the Court examines the language of each policy, (Ex. B) there is nothing in any of the policies that facially prohibit any of the conduct referred to by Superintendent Huff.

**KBC MEDIA RELATIONS**

Carrie was not engaged in "broadcasting and taping district activities" and was not a "media member." Carrie is not a "district employee" or "student" subject to "news and information concerning building events and programs."

**KFD SCHOOL VOLUNTEERS**

Carrie was given permission by the wrestling coach to volunteer in making snack bags. A wrestling coach or his administrative assistant Amy counts as working under the direction of "an administrative supervisor."

**KGB CONCEALED OBSERVATIONS**

This is directed at recording *human beings* ("students, employees, and/or board members"). The second part is recording those human beings *surreptitiously*. Carrie did not take any photos of any student, employee, or board member that evening. This policy has nothing to do with photographing inanimate objects such as what Carrie photographed.

**KGD DISRUPTIVE ACTS AT SCHOOL OR SCHOOL ACTIVITIES**

There was no "educational process" taking place in the vacant high school that evening. There was no school activity taking place in the empty hallways and

5

classrooms. Carrie did not threaten the safety of students or school personnel when she took photos that evening. Carrie did not disrupt anything that evening in that building containing her and two janitors.

**KGDA PUBLIC CONDUCT ON SCHOOL PROPERTY**

This authorizes the Superintendent to deny access to "school buildings, facilities, and/or grounds of the district." This does not authorize defendant Huff to restrict Carrie's access to property outside the district as Huff did. It doesn't authorize a no contact order.

The authority is first limited to "persons who have no lawful business to pursue at the school." Carrie has two students attending high school. And Carrie would have lawful business to attend church or any other third party gathering leased to those third parties which are on school property. Carrie would have lawful business to attend and speak at the school board's open meetings. The second authority rationale is directed to "persons who are acting in a manner disruptive or disturbing to the normal educational functions of the school." Carrie being on the second floor of the vacant high school taking photos of the hallway walls and doors did not disrupt anything. There were no "educational functions" taking place. Defendant Huff's idea of disruption is to attribute to Carrie what Libs of TikTok decide to publish on X – then attribute to Carrie the unknown actions of third persons who comment on X or purportedly emailed Hannah Louvau using the publicized school email address.

**KM <u>Visitors to the School</u>**

This policy provides that a visitor "shall schedule that visit with the teacher and/or a building administrator." Carrie had permission from the wrestling coach and worked with Amy each time getting her permission and cooperation in the building to make the snack packs. Carrie was not "disrupting the educational environment or otherwise creating a disturbance" in that vacant high school that evening. The policy provides authority to prohibit a parent from a school if she "persists in disruptive, unwelcome or intimidating conduct." It is unknown how Carrie taking photos that evening was "unwelcome" and to whom, or was otherwise "intimidating conduct." Likewise how Carrie offering to Libs of TikTok a photo that is not private but is – and has been – open to the public viewing and photographing for months – is "intimidating conduct."[1]

**SILENCING CARRIE IS ONE OF THE SUPERINTENDENT'S GOALS**

Couple of things are certain: banning Carrie from the school's board meetings silences her and makes her a little less relevant – and certainly less annoying – in the social discourse about all of the discomforting things these defendants do not want to hear. Removing Carrie from the Educational Services Advisory Committee also silences Carrie. No longer will Superintendent Huff hear the book reviews that only Carrie provides. If silencing Carrie was the only end goal, simply expel her from the

---

[1] And because USD 231 makes a rule does not *ipso facto* make it reasonable or Constitutional. Who would know exactly what is "intimidating conduct"? And in this case it appears this definition extends to conduct of third parties publishing material on X or making comments.

Committee and ban her from the school board meetings for bringing embarrassing publicity to the school district. But Superintendent Huff did far more than that.

**LET THIS BE A LESSON TO YOU CARRIE SHOW US REMORSE**

Not only did Superintendent Huff accomplish the above goal, he decreed that Carrie could not be anywhere any time where USD 231 was – on or off district property – as well as anywhere anytime Hannah Louvau was. It was more like an ex-communication on steroids. But what good did any of that accomplish? Obviously Superintendent Huff knows that Carrie has two students in the school district, one in particular a wrestler at the end of the wrestling season at the end of his high school wrestling career. Graduation is May 17, 2025. Why prevent Carrie from watching her son wrestle in the Olathe schools or during state finals hosted by the Blue Valley schools? According to Frank Bell, they want to extract a remorse from Carrie of the coerced kind. Defendant' Huff's ban was to signal his scarlet letter upon Carrie. She must return as the Prodigal Son prepared to be a non-thinking silent Handmaiden to the school's political agenda addressed in President Trump's Executive Order.

And why ban Carrie from all events in which third parties, such as churches have, in leasing from the school district? Just another crank on Huff's self-styled Braveheart Rack he put Carrie on. And what exactly is executive Huff expecting from Carrie to repent of – giving bad reviews on his library books or giving photos, screen shots, or videos of the board's meetings to Libs of TikTok or other social media groups?

**POST HAC REASONINGS**

"Government justifications for interfering with First Amendment rights must be genuine, not hypothesized or invented *post hoc* in response to litigation." *Kennedy v. Bremerton Sch. Dist.,* 597 U.S. 507, 543 n.8 (2022). Justification for such interference must also be communicated to the affected person. *See id.* ("But [defendant] never raised concerns along these lines in its contemporaneous correspondence with [plaintiff]"). As much as what Superintendent Huff said is in what he didn't say. He doesn't accuse Carrie of inciting anyone to make threats of harm to anyone. He doesn't say that Carrie took photos of private non-public areas. Neither does he say that Carrie revealed any personal or proprietary information – as everything Carrie photographed is not only on public display – it is purposedly put on public display to influence students. In fact, Huff never claims Carrie has ever had any personal contact with, or any communication with, Hannah Louvau.

## ARGUMENT
### I. **PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF HIS FIRST AMENDMENT CLAIMS**

"Speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Connick v. Myers*, 461 U.S. 138, 145 (1983). Ms. Schmidt has a right to be on USD 231 property as well as property beyond those boundaries. Defendants cannot deny Ms. Schmidt benefits based on her protected speech and protected activities. *See Seamons v. Snow,* 84 F.3d 1226, 1236 (10th Cir. 1996) ("government may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech—even though the person has no right to the valuable

9

governmental benefit and even though the government may deny him the benefit for any number of reasons"). The Tenth Circuit recently upheld a district court's reversal of a Colorado school district no trespass ban in *Pryor*. It used the more stringent *Garcetti/Pickering* test applicable to government employees.

In *Vollmecke v. Independence School District v. Independence School District,* Case No. 23-00644, 2023 WL 11200382 (W.D. Mo. Dec. 11, 2023 (Ex. C) Judge Phillips enjoined that school district from enforcing a one year ban from school property. Judge Phillips later granted summary judgment to the plaintiff (*Vollmecke v. Independence School District v. Independence School District,* Case No. 23-00644, 2023 WL 4524547 (W.D. Mo. October 11, 2024)). Even though the ban expired in January 2024, Plaintiff was "still restricted from participation with ISD Academies because [Superintendent] Herl does not believe Plaintiff is a good role model." *Id.* at *4. Judge Phillips granted summary judgment in favor of the plaintiff on Count 1 ("Ban impermissibly restricted speech in a public forum, a First Amendment Violation") and Count 3 ("the Ban, Policy 1431, and Policy C-155-P violate procedural due process by not offering a meaningful opportunity to be heard"). Judge Phillips held the Superintendent Herl was not entitled to qualified immunity. *Id.* at *7-8, *10.

"A school official's determination that an individual poses a threat to school safety is, without more, insufficient to justify such a broad ban." *Worthley v. School Committee of Gloucester*, 652 F.Supp.3d 204, 215 (2023) (granting injunctive relief as to trespass notice prohibiting Mr. Worthley not to appear on or enter the premises of school during school hours or at any school sponsored event or activity till end of

10

school year). "Courts have consistently held that categorically banning individuals from open school board meetings is unreasonable and unconstitutional." *Mama Bears of Forsyth County v. McCall,* 642 F.Supp.3d 1338, 1362 (2022).

In *Huminski v. Corsones*, 396 F.3d 53 (2d Cir. 2005), the plaintiff was prohibited under threat of trespass arrest from entering Vermont state court facilities. A "categorical ban on expressive speech singling out an individual does not even satisfy the lower threshold of reasonableness review." *Id.* at 549. In *Cyr v. Addison Rutland Supervisory Union*, 60 F.Supp.3d 536 (D.Vt. 2014), Mr. Cyr was prohibited for two years under trespass threat of arrest in entering school property. Mr. Cyr was consequently banned from attending school board meetings. The *Cyr* court held that the ban was not narrowly tailored to address the specific threat Mr. Cyr allegedly posed to the school principal. The *Cyr* court held that the trespass ban could have been limited to "school hours" or even posted a police officer at the public meetings allowing Mr. Cyr to attend.

Judge Story in *Mama Bears* further ruled that "singling out one individual, banning his (perhaps disfavored) speech, and essentially preventing him from engaging in a form of civil discourse that is available to everyone else ... is unreasonable." (quoting *McBreairty v. Sch. Bd. of RSU 22*, 616 F.Supp.3d 79, 96 (D. Me. July 20, 2022)).

Judge Story cited *Stevens v. Sch. City of Hobart*, 2015 WL 4870789, at *14 (N.D. Ind. Aug. 6, 2015). The *Stevens* plaintiff resigned from his job at a defendant School City of Hobart after he was accused of child molestation by a former student.

After his resignation, he was informed that he should not enter school property and if so would be considered trespass. Yet Stevens expressed a desire to attend after-school hours School Board meetings and to attend school events. *Id.* at *2-5. The *Stevens* court held in part that the ban "was not narrowly tailored to achieve the interest" of protecting students. Instead, it foreclosed "a means of communication" and that the complete ban achieved order during school hours.

In *Brown v. City of Jacksonville*, 2006 WL 385085 (M.D.Fla. 2006) that court granted a motion for a preliminary injunction regarding an individual who had been barred from attending City Council meetings for seven City Council cycles. Brown court noted that the plaintiff Brown "was effectively prohibited from attending or speaking at City Council meetings and City Council Committee meetings for almost three months." 2006 WL 385085, at *1. The ban was imposed because Mr. Brown had not observed the rules of the Council when making his remarks at a Council meeting.

The *Brown* court rejected the idea that Mr. Brown could still communicate through alternative means.

## II. THE REMAINING INJUNCTION FACTORS FAVOR THE PLAINTIFF

Where the government is the defendant, these remaining factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Public interest favors plaintiff's assertion of his First Amendment rights. *See Elam Constr., Inc. v. Regional Transp. Dist.*, 129 F.3d 1343, 1347 (10th Cir.1997).

Courts "focus on the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals with personal disputes and grievances

unrelated to the public's interest." *Lighton v. Univ. of Utah,* 209 F.3d 1213, 1224 (10th Cir. 2000). Carrie's photographing and communicating with Libs of TikTok was on matters of public concern, which "are those of interest to the community, whether for social, political, or other reasons… and statements revealing official impropriety usually involve matters of public concern." *Brammer-Hoelter v. Twin Peaks Charter Acad.,* 492 F.3d 1192, 1205 (10th Cir. 2007). While Hannah Louvau is entitled to her physical safety her perceptions of mental health or what offends her is not something she is entitled to be insulated from in the public discourse as a public servant. As the district court Judge Kane wrote the school Superintendent's "improper emphasis illustrates their misunderstanding of the First Amendment" and that justice should prevail over the Superintendent's goal of having the "absence of tension":

> These accusations are necessarily met with skepticism, as standards of "civility" and "professionalism" have been used as tools of discrimination and to silence opposition. See, e.g., Lynn Mie Itagaki, The Long Con of Civility, 52 Conn. L. Rev. 1169, 1171–72 (2021) ("We should be deeply suspicious with demands for civility that are often deployed to quell dissent from marginalized populations and to dampen democratic practices."); Leah Goodridge, Professionalism as a Racial Construct, 69 UCLA L. Rev. Discourse 38 (2022). Defendants seek to preserve the "tranquility" of DPS. See Resp. at 19, 24. In short, their focus in these proceedings is on the absence of tension, not the presence of justice.

At the injunction and trial level, the burden is upon defendants to justify their actions. *See Greater Phila. Chamber of Commerce v. City of Phila.,* 949 F.3d 116, 133 (3d Cir. 2020) (In "First Amendment cases the initial burden is flipped"); *See Ashcroft v. American Civil Liberties Union,* 542 U.S. 656, 660 (2004) (same). The government bears the burden of proving the law is constitutional, tracking the burdens at trial. *Id.* Each defendant bears the burden to show each and every reason each defendant

13

suppressed Carrie Schmidt' speech and his subsequent removal was Constitutional. *See Kennedy v. Bremerton School District*, 142 S. Ct. 2407, 2426 (2022) ("Whether one views the case through the lens of the Free Exercise or Free Speech Clause, at this point the burden shifts to the District").

The Court should enter an order virtually identical to the one issued in the *Pryor* district court (Ex. D):

• **Defendants Gardner Edgerton School, Superintendent Brian Huff, and Principal Frank Bell and Defendants' agents, servants, employees, and attorneys and all others who are in active concert or participation with Defendants are preliminarily ENJOINED from enforcing the terms of the letter written by Brian Huff dated February 11, 2025, and are further ENJOINED from taking any other retaliatory action against Ms. Schmidt, her family, for pursuing this lawsuit.**

• **This Preliminary Injunction shall take effect immediately and shall remain in effect pending trial in this action or further order of this Court.**

• **No bond under Federal Rule of Civil Procedure 65(c) is required.**

Plaintiff requests a hearing in this matter as time is of the essence.

/s/Linus L. Baker
Linus L. Baker, KS 18197
6732 West 185th Terrace
Stilwell, KS  66085-8922
Telephone:  913.486.3913
Fax:             913.232.8734
E-Mail: linusbaker@prodigy.net
Attorney for the plaintiff