## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CARRIE SCHMIDT,

        *Plaintiff*,

v.

        Case No. 25-CV-2081-EFM-GEB

BRIAN HUFF, et al.,

        *Defendants*.

## MEMORANDUM AND ORDER

Before the Court is Plaintiff Carrie Schmidt's Motion for a Preliminary Injunction (Doc. 4). On February 11, 2025, Defendant Superintendent Brian Huff of the Gardner Edgerton Unified School District No. 231 ("USD 231") emailed Plaintiff a letter banning her from: (1) being on school district property through June 30, 2025; (2) attending school events or activities—both home and away—without the express written permission from building administration; and (3) serving on the school's Educational Services Advisory Committee. Plaintiff asks the Court to enjoin Defendants from enforcing the terms of the letter. For the reasons stated below, the Court grants in part and denies in part Plaintiff's motion.

### I.    Factual and Procedural Background

Gardner Edgerton High School is a part of USD 231 and is located in Johnson County, Kansas. USD 231's Superintendent is Defendant Brian Huff. Plaintiff Carrie Schmidt is the mother of two students, a sophomore and a senior, who attend Gardner Edgerton High School.

Plaintiff's son, a high school senior, is on the Gardner Edgerton wrestling team. Plaintiff volunteered to help make "snack bags" for the wrestlers on the days they have wrestling matches. With permission, Plaintiff uses the teacher's lounge on the first floor to put together the snack bags. Once the snack bags are made, they are placed in the wrestling team's coolers. Plaintiff often takes pictures of the completed snack bags and sends them to the coaches and Athletic Secretary, so they know where everything is located. This system was already in place before Plaintiff volunteered. Plaintiff has helped make snack bags for the wrestling team since at least 2023.

On May 4, 2023, Plaintiff became a member of the USD 231 Educational Services Advisory Committee. The Committee investigates and reviews USD 231 curriculum, instruction, and assessment topics as well as reviews the accreditation process, progress, curriculum standards, and Federal Programs. The Committee makes recommendations to the School Board and Superintendent Huff about these matters.

On January 29, 2025, President Trump issued Executive Order 14190, entitled "Ending Radical Indoctrination in K-12 Schooling." Based on the advertisements, posters, and stickers placed on the walls and windows of USD 231, Plaintiff believed that the school was in violation of the President's Executive Order by endorsing and otherwise advocating for gender ideology and discriminatory equity ideology.

On February 3, 2025, Plaintiff went to the high school in the evening to prepare snack bags for the next day. Plaintiff went to the teachers' lounge, made the snack bags, and prepared everything she usually does for the wrestling team. After she finished, Plaintiff went upstairs to the second floor and found the room number associated with a promotional poster for the Gay Straight Alliance Club. The classroom's lights were already on, and the door was open. Plaintiff took pictures of the classroom door, posters displayed on the classroom walls, and books stacked

on the classroom bookshelves. The classroom door had multiple posters and stickers on it, including the teacher's last name. Unbeknownst to Plaintiff at the time, the classroom's teacher, Hanna Louvau, was the seminar[1] teacher for Plaintiff's sophomore daughter.

"Libs of TikTok" is a popular social media account known for posting photos and videos of individuals or organizations that often express progressive or liberal views, especially those surrounding topics like LGBTQ+ rights, education, and identity. The account typically collects its content by browsing public posts on social media and reposting them, or by directly posting submissions from followers who send in content they believe align with the account's focus. Although named Libs of TikTok on all platforms, the account is active on multiple social media networks, including Instagram, X (formerly Twitter), Facebook, and TikTok.

Plaintiff sent the Libs of TikTok X account the pictures she took at the school. Plaintiff had no control over whether Libs of TikTok saw her photos, decided to post them, picked which ones to post, or would notify her when it did post her photos. On February 7, 2025, at 10:26 a.m., Libs of TikTok posted the photo of the classroom door that Plaintiff had submitted. The post's caption read, "School in Gardner, Kansas (@GEHSBlazers) Strip them of their funding immediately."

That same afternoon, Plaintiff was at the high school making snack bags. While she was in the office, Superintendent Huff confronted Plaintiff about taking pictures and sending them to Libs of TikTok. Defendant Huff told Plaintiff that her actions disrupted the school day because teacher Hanna Louvau—whose name was posted on the classroom door—was so distraught by the comments made on the post that she asked to leave for the rest of the school day.

---

[1] Seminar is equivalent to study hall. During this class period, students can get their homework done, go get help from another teacher, make up a test, or meet for a school club.

On February 11, 2025, Defendant Huff emailed Plaintiff a letter on official USD 231 letterhead (the "Letter"). In it, the Letter stated that Plaintiff had taken "certain actions . . . in violation of Board policy and state law that have resulted in threats, intimidation, abuse and harassment directed at school district personnel and students which has caused a material disruption to the school environment." The Letter further explained that Plaintiff's taking pictures and posting them on social media without the permission and consent of the teacher or the school district contravened "Board Policies KGB,[2] KBC,[3] KGD,[4] KGDA,[5] KFD[6] & KM[7] and state law."

As a result of Plaintiff's actions, the Letter informed Plaintiff that she was: (1) removed from the Educational Services Advisory Committee; (2) banned from being on school property through June 30, 2025; (3) banned from attending school events or activities—home or away— without the express written permission from building administration; (4) prohibited from having any contact with the teacher whose classroom was the subject of Plaintiff's photos; and (5) required to make specific arrangements with building administration to schedule parent-teacher conferences.

After receiving this Letter, Plaintiff alleges in her Complaint that Defendant Bell—the school's principal—told her via email that she did not have the district's permission to attend "any future GEHS functions, home or away, including our Graduation Commencement Ceremony."

---

[2] USD 231's Concealed Observations policy.

[3] USD 231's Media Relations policy.

[4] USD 231's Disruptive Acts at School or School Activities policy.

[5] USD 231's Public Conduct on School Property policy.

[6] USD 231's School Volunteers policy.

[7] USD 231's Visitors to the School policy.

She also alleges that Defendant Bell told her that she must attend all parent-teacher conferences by video conference or telephone.[8]

On February 14, 2025, Plaintiff filed her Complaint. On February 16, 2025, Plaintiff filed a Motion for a Preliminary Injunction. The Court scheduled an evidentiary hearing for the afternoon of March 20, 2025. That morning, Defendants filed their Response to Plaintiff's Motion. The Court now issues this written order to memorialize what was ruled on the record.

## II.    Legal Standard

Preliminary injunctions are extraordinary remedies—courts will not grant them as a matter of right.[9] "The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance."[10] Thus, preliminary injunctions preserve the status quo pending the outcome of the case.[11] The status quo is "the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing."[12] The legal standard for a preliminary injunction is well-established. Under Rule 65 of the Federal Rules of Civil Procedure, a party seeking a preliminary injunction must show: "(1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the

---

[8] During the hearing, Plaintiff testified that every request she made to the district to attend a certain event has been granted, including her son's graduation. She maintained that the district enforced its policy about attending parent-teacher conferences virtually. Counsel for the school district stated that he was not entirely certain and did not know the details of what limitations were ultimately enacted regarding parent-teacher conferences.

[9] *Blackmon v. U.S.D. 259 Sch. Dist.*, 769 F. Supp. 2d 1267, 1277 (D. Kan. 2011).

[10] *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005).

[11] *Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986).

[12] *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1155 (10th Cir. 2001) (citations and quotations omitted).

injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest."[13]

### III.    Analysis

Defendants claim that their treatment of Plaintiff is warranted because she violated several school policies and Kansas state law. Plaintiff claims that she committed no such violations, but even if she did, her treatment was nonetheless unwarranted. The primary issue in this case is determining what offense, if any, Plaintiff committed. To do so, the Court will address Defendant's cited state law violation and school policy violations. Only after determining Plaintiff's offense may the Court consider whether her treatment was just.

Defendants' Letter fails to specify which state law Plaintiff violated. Moreover, during the hearing, Defendants provided no evidence or argument as to which state law Plaintiff violated. In their Response (filed the morning of the hearing), Defendants conclusorily state, "The posting of the picture on February 7, 2025, submitted by Plaintiff . . . resulted in a disruption to the educational environment all in violation of Board policies, including Policy KGC Bullying by Parents . . . and state law, K.S.A. 72-6147." Defendants provide no analysis as to what K.S.A. 72-6147 says or how Plaintiff specifically violated it. As such, the Court concludes that Plaintiff's offense, if any, is not based on a violation of state law.

The Court next considers whether Plaintiff violated school policy. The Letter claims that Defendants' decision was based on Plaintiff's violation of Board Policies KGB, KBC, KGD, KGDA, KFD, and KM. Notably, Defendants' Response does not analyze any of these policies; rather, it addresses for the first time a new policy, Policy KGC, Bullying by Parents. At the hearing, Defendant Huff was questioned on each of the listed policies and asked to explain how Plaintiff

---

[13] *First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017) (citations omitted).

violated any of them. He was unable to point to any specific language that Plaintiff violated, and instead stated that Plaintiff violated the Board's "interpretation" of each policy.

Even considering the Bullying by Parents Policy, Defendant Huff was unable to explain how Plaintiff bullied any school staff. Instead, he referenced that Plaintiff's behavior generally posed "safety concerns." First, the school's anti-bullying policy prohibits bullying by a parent towards a staff member "on or while using school property." On February 3, Plaintiff took photos of a public space, i.e., a classroom door. No students or staff were photographed. The photo was sent to a third-party publisher. The publisher, Libs of TikTok, did not post the photo until February 7, four days after the photo was taken. The harm suffered by the staff member was caused by random, anonymous users who negatively commented on the publisher's post. Those comments were not made on school property, Libs of TikTok did not post the photo on school property, and there is no evidence that Plaintiff sent Libs of TikTok the photo while she was on school property.

Lastly, Defendants argued that even if Plaintiff did not bully the teacher herself, she should still face consequences because she initiated the process and prodded somebody else to be the trigger. Notwithstanding the fact that "instigating" is not against any written school policy, this Court nonetheless finds that this case fails to rise to the level of instigation found in other similar cases. Here, there is no evidence that Plaintiff provoked Libs of TikTok to post something threatening, harassing, intimidating, or abusive. Rather, she sent publicly posted material to a public platform that disseminated the already-public material to a larger audience.

But even assuming that Plaintiff was responsible for the final Libs of TikTok post, the caption to the post merely says, "Strip them of their funding immediately." This language is patently unthreatening. But even if it were threatening, it is certainly directed at the school district—not at any individual student or staff member. Several hostile comments from random,

anonymous people were added to the online post. The fact that such people posted horrific or disturbing comments to the Libs of TikTok post about the classroom's teacher is twice removed from Plaintiff. No evidence was presented showing that Plaintiff herself committed any bullying, and in response to a direct question, Defendant Huff admitted that he had no evidence she had personally engaged in any bullying activity. Accordingly, because Plaintiff did not violate any school policy, the treatment she faced by Defendants was unwarranted. And the Court further notes that her actions of posting pictures, however such actions might be interpreted or argued, is wholly unrelated to her attendance at school events.

Neither party disputes the irreparable harm Plaintiff faces if Defendants' ban is upheld. The ban has deprived Plaintiff of her *right* to attend irreplicable events such as her son's senior banquet, state wrestling tournament, and graduation ceremony. Although Plaintiff has been granted *permission* to attend these events, the mere fact that she must obtain permission when other similarly situated members of the public do not is a deprivation of liberty. Defendants cannot strip Plaintiff's rights down to privileges without just cause. Here, Defendants have failed to show that Plaintiff violated the law or the school's policies, and so they have no just cause on which to base their treatment.

As such, the Court partially reinstates the status quo to the last uncontested status between the parties. Defendants unduly restricted Plaintiff's liberty by requiring that she obtain Defendants' permission to attend an activity or event that was otherwise open to the public. Admittedly, Defendants did this under no legitimate reason. Plaintiff has the right to publicly disagree with the positions of a government entity, including those of a public school, without facing discrimination.

Therefore, from now on, Plaintiff may attend the same activities and events in the same manner as any other parent of an enrolled student. This means that she may physically attend

events such as wrestling matches, senior night, commencement, graduation, school board meetings, and parent-teacher conferences without Defendants' express permission.

This does not mean that Plaintiff may wander off into restricted areas of the building or facility in which the event is held. Schools have the right to control access to specific locations or events without implicating a liberty interest, so Plaintiff is enjoined from venturing into these restricted areas in the future.

Additionally, this does not mean that Plaintiff is immune from these restrictions being imposed upon her again if Plaintiff engages in public disruptive conduct. Although Plaintiff may attend school board meetings, she is subject to the terms and conditions the Board imposes. This includes strict adherence to time limits and restrictions on promoting salacious material or engaging in threats or bullying. The Board is reminded that it must equally apply its terms and conditions to all speakers and must not engage in viewpoint discrimination against any speaker.

Although Plaintiff may attend parent-teacher conferences in person, she is instructed not to have contact with teacher Hanna Louvau. Although Plaintiff has not had any contact with Louvau to date and is unlikely to have contact with her in the future, the Court maintains this restriction to prevent Louvau from feeling harassed or threatened by Plaintiff in the future.

Lastly, the Court upholds Defendants' removal of Plaintiff from the Educational Services Advisory Committee. USD 231's Standards of Conduct for Volunteers clearly states that "volunteering is a privilege," and "the district may terminate the services of a volunteer at any time." Schools may control who volunteers at its school events and who serves on its school committees. Because Plaintiff has not adequately demonstrated why she has a liberty interest in volunteering, the Court leaves unchanged the school's decision to remove Plaintiff from USD 231's Educational Services Advisory Committee.

Accordingly, as to Defendants' location restrictions on Plaintiff, the Court finds that (1) Plaintiff is likely to succeed on the merits of her claim; (2) Plaintiff will suffer irreparable harm to her liberty interests if Defendants continue to restrict her access; (3) because Plaintiff has not been publicly disruptive or personally engaged in bullying, the prohibition on Plaintiff's access is greater than the unfounded "safety concerns" Defendant espouses; and (4) the injunction does not prevent Defendants from controlling access to school district property and activities, Plaintiff from interacting with Hanna Louvau, or Defendants from otherwise protecting students and staff from bullying. As such, the balance tips in favor of issuing a limited preliminary injunction.

**IT IS THEREFORE ORDERED** that Plaintiff Carrie Schmidt's Motion for a Preliminary Injunction (Doc. 4) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that this Preliminary Injunction shall remain in effect pending trial in this action or further order of this Court.

**IT IS FURTHER ORDERED** that no bond under Federal Rule of Civil Procedure 65(c) is required.

**IT IS SO ORDERED.**

Dated this 25th day of March, 2025.


ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE