# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

Carrie Schmidt

                       **Plaintiff**

v.                                     2:25-cv-02081-EFM-GEB

Brian Huff, *et al*

                    **Defendants**

### PLAINTIFF'S MOTION TO DISQUALIFY GREGORY GOHEEN

The plaintiff moves to disqualify Gregory Goheen as defense counsel in this matter. The plaintiff has not delayed in bringing this motion.[1] The motion is not premature. Given the Court's injunction ruling, as to the substance of the Huff letter, the Court can "divine those issues that will actually be contested at a trial." *GRIDER V. CITY & CNTY. OF DENVER,* No. 10-cv-00722-MSK-MJW, 2011 U.S. Dist. LEXIS 17530, at *27 (D. Colo. Feb. 23, 2011). *See* ECF 17 ("Plaintiff is likely to succeed on the merits of her claim").

In Superintendent Huff's letter (ECF 4-1) it could be called a vague kitchen sink approach as defendant Huff not only cited the taking of photos on February 3, 2025, but also gathered up an amorphous mass of purported unidentified conduct in the past: "Given your prior experience with social media postings and the resultant threats, harassment, intimidation and disruption, your present conduct was clearly

---

[1] An unjustified delay in filing a motion to disqualify can be sufficient grounds for denying the request. *VANCE AS TR. OF STEPHEN M. VANCE REVOCABLE TR. DATED OCTOBER 9, 2017 V. VANCE*, 2020 WL 5530041, at *5 (D. Kan. 2020). A litigant "may not delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of the case has been completed." *Id.*

intentional and designed to bully, intimidate and harass the teacher and others, including students, within the district. This type of conduct is inappropriate, unacceptable and cannot be tolerated in our schools."

The defendant Superintendent Brian Huff testified at the injunction hearing on March 20, 2025, that the letter citing school policy violations that was drafted and sent to Carrie Schmidt was the result of a "team effort."[2]  During that investigative and letter process there would have likely been drafts or edits of the substance of the letter.  Specifically, when asked who came up the list of policies defendant Huff listed in that letter as purportedly being violated by Ms. Schmidt, Huff testified it was a "team effort."  Evaluating whether a school policy applied to Ms. Schmidt's conduct is the business of the school district.  When asked who was on "the team," defendant Huff identified Mr. Goheen.   Undeniably Mr. Goheen was either part of the investigation, a decision maker, a business consultant, or any combination thereof.  This matter was "business" or even "public relations matters."  *BURTON V. R.J. REYNOLDS TOBACCO CO.,* 200 F.R.D. 661, 669 (D. Kan. 2001).  Besides that, Mr. Goheen had direct, personal relationships with key decision makers in which he could observe, and in fact direct or guide, how Superintendent Huff would deal with the plaintiff Carrie Schmidt.  Clearly, according to Superintendent Huff, Mr. Goheen was privy to, and a part of, the decision making process undertaken before the letter with all of its adverse consequences was sent.  Mr. Goheen was privy to, and a part of, the

---

[2] While the Court has access to the electronic recording of the hearing reflecting this testimony, the plaintiff has requested a transcript of the proceeding while defendant Huff was on the witness stand.

decision-making process undertaken when the decision was made to cite policy violations meting out the consequences upon Ms. Schmidt rather than acknowledge Ms. Schmidt had Constitutional rights as described in the Court's injunction memorandum.

Mr. Goheen was part of the business making decision prior to any litigation. The "mere fact of submission of a document to counsel for legal input is not a protected communication." *BURTON*, 200 F.R.D. at 670.[3] Thus, it appears that Mr. Goheen participated in this "business" decision of the letter and participated in the unconstitutional conditions imposed upon Ms. Schmidt. Making the decision or being a part of the decision making group is a relevant to a number of factual issues in this case. This issue also implicates discovery of the motives, mindset, and participation of the individuals who deprived Ms. Schmidt of her Constitutional rights. While the Kansas Rules of Professional Conduct ("KRPC") 3.7 contemplates Mr. Goheen can participate prior to trial, it should come as no surprise that his disqualification under Rule 3.7 prior to trial would be an issue.

### STANDARD OF REVIEW

Motions to disqualify are decided case-by-case based on their own facts. *See*

---

[3] Putting aside whether the sanctions contained in the letter were created with the assistance of Mr. Goheen or for his review, it was still a "team" effort according to the author of the Huff letter: "when a document is created for simultaneous review by both legal and nonlegal personnel, for both legal and nonlegal purposes, it will likely not be construed as having the primary purpose of obtaining legal advice." *PONCA TRIBE OF INDIANS OF OKLAHOMA V. CONTINENTAL CARBON CO.*, 2008 WL 4372802 (W.D. Okla. 2008).

3

*LAYNE CHRISTENSEN CO. V. PUROLITE CO.,* No. 09-2381-JWL-GLR, 2011 WL 1113543, at \*5 (D. Kan. Mar.24, 2011). Kansas Rule of Professional Conduct 3.7(a) states that a "lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness." *LOWE V. EXPERIAN*, 328 F. Supp. 2d 1122, 1125 (D. Kan. 2004). The primary purpose of this rule is to avoid confusion of the jury. *Id.* at 1126. Thus, it does not necessarily require exclusion of an attorney from pretrial activities unless participation in those activities would later reveal the attorney's dual role as advocate and witness. *Id.* at 1126-27.

There are two sources when considering a motion to disqualify. "First, attorneys are bound by the local rules of the court in which they appear…. Second, because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law." *UNITED STATES V. STIGER*, 251 F. App'x 508, 511 (10th Cir. 2007). Plaintiffs, as the moving party, bear the burden of proving that disqualification is warranted. *BIOCORE MED. TECHS., INC. V. KHOSRWSHAHI*, 181 F.R.D. 660, 664 (D. Kan. 1998). While the Tenth Circuit has not spoken directly on this issue, the Fifth Circuit has held that courts must take measures to ensure that unethical conduct does not occur in proceedings before it. *IN RE AMERICAN AIRLINES*, 972 F.2d 605, 610-11 (5th Cir. 1992); *COLE V. RUIDOSO MUN. SCHOOLS,* 43 F.3d 1373, 1383 (10th Cir.1994) (favorably citing *American Airlines*). The District of Kansas follows KRPC 3.7 which prohibits a lawyer from acting "as an advocate at a trial in which the lawyer is likely to be a necessary witness" unless: (1) the testimony relates to an uncontested

4

issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client. KRPC 3.7. This rule allows lawyers, who will be a necessary witness at trial, to participate in pretrial proceedings including participation in non-evidentiary hearings, motion hearings, status conferences, settlement conferences, and the final pretrial conference, and allowed them to continue to sign and file pleadings with the court.[4]

This Court applies a three-part test. *See WALKER V. NEWMAN UNIV., INC.,* No. 19-CV-2005-DDC-TJJ, 2019 WL 2268971, at *2 (D. Kan. May 28, 2019). Under the test, the Court should disqualify an attorney pursuant to KRPC 3.7 only if: (1) the attorney would give evidence material to the issue being litigated; (2) the evidence is unobtainable from other sources;[5] and (3) the testimony is prejudicial or potentially prejudicial to the testifying attorney's client. *Id.*

### PRETEXT IS A JURY QUESTION

There are many factual reasons a jury could believe any of the policy reasons proffered by the defendants were pretextual: including the post letter Bullying policy as being *post hoc* fabrication. From the limited rationale stated by Superintendent Huff in his letter – then his injunction testimony stating there was a group who made

---

[4] *AMERICAN PLASTIC EQUIP., INC. V. TOYTRCKERZ, LLC,* No. 07-2253-DJW, 2009 WL 902424, at *7 (D. Kan. March 31, 2009); *see also LOWE at* 1127-28.

[5] Question to defendant Huff: "What did Mr. Goheen tell you about which policies might be applied to Ms. Schmidt before your letter was written"? Objection: Hearsay. Mr. Goheen should be available to testify as to that subject matter. If no objection is made, the plaintiff should be able to call Mr. Goheen to ascertain whether the specific information was actually conveyed as testified to by Superintendent Huff.

the decision – then the belated "Bullying Parent Policy" providing other reasons – all evidence of "shifting rationales." *CROWE V. ADT SERVS., INC.,* 649 F.3d 1189, 1197 (10th Cir. 2011). "A plaintiff can show pretext by revealing `such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence…" *PLOTKE V. WHITE*, 405 F.3d 1092, 1102 (10th Cir. 2005). *Post hoc* rationalizations are evidence of pretextual viewpoint discrimination. *See AM. FREEDOM DEFENSE INITIATIVE V. WASH. METRO. AREA TRANSIT AUTH.,* 901 F.3d 356, 366 (D.C. Cir. 2018). The ban decision was not defendant Huff's alone – it was a "team" including Mr. Goheen.

### GOHEEN'S UNDERSTANDING IS RELEVANT TO DEFENDANTS' AFFIRMATIVE DEFENSES *POST HAC* REASONING IS EVIDENCE OF MALICE AND DISCRIMINATORY INTENT

The Huff letter was not written overnight. Carrie was first confronted on February 7, 2025. Four days later Dr. Huff sent the "team" letter. Defendants claim in opposition to the injunction motion that Ms. Schmidt suffered all of those consequences listed in Huff's letter because she violated the Bullying policy directed to parents. Thus, invoking the Bullying policy, when it was omitted from the policy list cited in the Huff letter, could indicate to a jury doubts about the validity of invoking the five policies in Huff's letter. *See MACQUIGG V. ALBUQUERQUE PUB . SCH. BD . OF EDUC.,* No. 12-1137 2015 WL 13659218, at *5 (D.N.M. Apr. 6, 2015) ("jury could infer from the fact that Defendant emphasized a new, personal attacks rationale in his November 5, 2009 letter that he himself had doubts about the validity of the personnel matters rationale he had invoked at the Board meeting"). It will

also be used to show that Mr. Goheen admits that Huff did not list the Bullying policy (hence why the Bullying policy was listed in the opposition to the injunction motion). And it also goes to the credibility of any defendant's claim that that Mr. Goheen's or defendant Huff's interpretations about the policies is correct, accurate, or based upon his personal knowledge rather than speculation.

Mr. Goheen might testify as to his own knowledge (or lack thereof) of defendant Huff's state of mind in sanctioning Ms. Schmidt. *See UNITED STATES V. DFAZIO*, 899 F.2d 626, 632 (7th Cir. 1990) (affirming disqualification of defense counsel prior to trial finding that "the parties could hardly have stipulated to what [the attorney] knew about [his client's] state of mind . . . since that knowledge was only in the ken of [the attorney]…"). Allowing the Defendants to advance their reasons as to why Ms. Schmidt was removed from the committee and then banned while relying upon Mr. Goheen's participation in the decision and then *post hoc* reasoning while at the same time presenting Mr. Goheen as a mere advocate would result in the intermingling of the roles of witness and advocate that KRPC 3.7 was precisely designed to prevent.

**WHY WAS MS. SCHMIDT GIVEN EACH OF THE SPECIFIC CONSEQUENCES?**

Mr. Goheen' testimony is prejudicial to the defendant Gardner School District, Frank Bell, and Brian Huff concerning the reasons and motivations for the Ban letter. An essential fact in this case is motive related to retaliation: why Ms. Schmidt was given all of the adverse consequences as set out in Exhibit 1 (Huff Letter) that was admitted at the injunction hearing. Another essential fact is why Huff listed five

7

policies, then why a Bullying policy was later invoked. As Huff testified, Mr. Goheen was a part of the "team" responsible for the ban letter. Focusing on claims against Huff, a plaintiff in a 1983 claim alleging equal protection violation must prove that a defendant acted in a discriminatory manner and that the discrimination was intentional. It may be proven by direct or indirect circumstantial evidence. *FEDERAL DEP. INS. CORP. V. HENDERSON*, 940 F.2d 465, 471 (9th Cir. 1991). *MONTEIRO* [6] makes clear that when a public official personally attacks a citizen, and then responds to the citizen's attempt to defend him/herself by retaliating, reasonable minds could differ as to the public official's motivations: *i.e.,* decorum vs. viewpoint based animosity. Huff's reasons and motivations are at issue in this case. And because Mr. Goheen interjected himself in the decision making as to the ban – and *post hoc* in attempting to redefine or recharacterize Dr. Huff's state of mind in invoking a different school policy called "Bullying" – why defendant Huff did what he did – this implicates Attorney Goheen's own understanding and generally how Mr. Goheen knows the state of mind of Huff. Only Mr. Goheen can answer those questions about his knowledge and his own ability to interpret Huff's motives and words. Mr. Goheen's testimony is relevant, material, and unobtainable elsewhere.

Whether Huff was motivated by animosity toward Ms. Schmidt's viewpoint is a question of fact.[7] See *MONTEIRO at* 405; *MITCHELL V. FORSYTH*, 472 U.S. 511, 529

---

[6] *MONTEIRO V. CITY OF ELIZABETH*, 436 F.3d 397, 405 (3d Cir. 2006).

[7] When "the qualified immunity analysis turns on a subjective element, as it does when examining motive, the qualified immunity analysis is modified slightly. The defendant must do more than merely raise the [qualified] immunity defense; he must make a prima facie showing of the objective reasonableness of the challenged

(1985) (improper intent is a pure question of fact); *WALKER V. HORN*, 286 F.3d 705, 710 (3d Cir.2002). When qualified immunity depends on disputed issues of fact, those issues are to be decided by a jury and not the court as a matter of law. *See JOHNSON V. JONES*, 515 U.S. 304, 313 (1995) (qualified immunity may turn on disputed issues of fact); *KARNES V. SHRUTSKI*, 62 F.3d 485, 491 (3d Cir.1995) ("a jury should decide disputed factual issues relevant to that determination"). Attorneys are not necessary witnesses if the substance of their testimonies can be elicited from other witnesses. But only Mr. Goheen can explain his own knowledge as to the ban decision.

### PRIVATE PERSONS JOINT ACTION WITH STATE

Superintendent Huff testified that there was a team who came up with the letter consequences and the policies that were to be cited as being violated by Ms. Schmidt. It was part of the unconstitutional deprivation of Ms. Schmidt's rights. "Private persons who willfully participate in joint action with a state official act under color law within the meaning of § 1983." *BARRETT V. PAE GOV'T SERVS., INC.,* 975 F.3d 416, 434 (4th Cir. 2020); *ADICKES V. S.H. KRESS & CO.,* 398 U.S. 144, 152 (1970). A person may become a state actor by conspiring with a state official or by engaging in joint activity with state officials. *PRICE V. HAWAII,* 939 F.2d 702, 708 (9th Cir. 1991); *NEWCOMB V INGLE,* 944 F.2d 1534, 1536 (10th Cir. 1991).

---

conduct." *MCBETH V. HIMES*, 598 F.3d 708, 724 (10th Cir. 2010).

**DISQUALIFYING GOHEEN AS TRIAL COUNSEL WILL NOT WORK A SUBSTANTIAL HARDSHIP ON ANY DEFENDANT**

None of the defendants will suffer a substantial hardship if Mr. Goheen is disqualified as counsel. Because the plaintiff seeks only to disqualify Mr. Goheen and not the entire firm[8], other counsel from that firm can serve as defendants' trial counsel without losing time to bring in counsel unfamiliar with the case. Last, the defendants unilaterally created this entirely foreseeable situation, and it is therefore only fair that the defendants bear the consequences of its choices. *See NOVARTIS PHARM. CORP. V. APOTEX CORP.,* No. 02-cv-08917, 2004 WL 1396257, at *5 (S.D.N.Y. June 22, 2004) ("that hardship will be the result of defendants' unilateral choice … might have to be disqualified was foreseeable from the outset of these proceedings…. it is only fair that defendants unilaterally bear the consequences"); *REAL V. BUNN-O-MATIC CORP.,* 195 F.R.D. 618, 626 (N.D. Ill. 2000). It was entirely foreseeable that Mr. Goheen would be witness at trial as formulating justifications for and then participating in the sanctions meted out by Superintendent Huff.

**CONCLUSION**

Rule 3.7 alone justifies disqualifying Mr. Goheen. How the Huff letter was formulated with its policy citations and adverse consequences (and by whom) is relevant evidence. The Huff letter itself is admissible evidence. *See AYUS V. TOTAL RENAL CARE, INC.,* 48 F. Supp. 2d 714 (S.D. Tex. 1999) (holding that because attorney "involved himself in the facts of this case" letters were necessary evidence that

---

[8] Reserving the right to move to disqualify other attorneys who were similarly involved as Mr. Goheen was from that firm upon discovery.

disqualification was proper under equivalent of Rule 3.7). The unsworn witness rule also provides a separate justification for disqualification. To not disqualify would allow Mr. Goheen to function as an unsworn witness even as was done in the invocation of the new Bullying policy in the defendants' opposition to the injunction. The jury will hear that Superintendent Huff was not alone in the formulation of what policies applied and then what sanctions were meted out: including identify Mr. Goheen who has firsthand knowledge. In culinary vernacular, Mr. Goheen was one of the chefs right there when the recipe was created, the dish prepared, and then presented with all its garnishments to Ms. Schmidt. Mr. Goheen will surely function as an unsworn witness. *See U.S. V. EVANSON*, 584 F.3d 904, 909 (10th Cir. 2009) (attorney acts as an unsworn witness when his relationship to his client results in his having first-hand knowledge of the events presented at trial enabling the attorney to subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross-examination).[9] *See UNITED STATES V. BECKER*, No. 10-40077-02-JAR, 2011 WL 93759, at *4 (D. Kan. Jan. 11, 2011) ("Even if the

---

[9] The appearance at trial of an attorney who has first-hand knowledge of, or actual involvement in, the events presented may undermine the integrity of the judicial system in several ways. The attorney may prejudice his client because his involvement constrains him from making certain arguments on his client's behalf or because he is tempted to minimize his own involvement at his client's expense. *See* Rule 1.7). Or he may exercise an unfair advantage against the [plaintiff] because, through opening and closing statements or the questioning of witnesses, he may "subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross examination." And an attorney acting as an unsworn witness may tarnish the integrity of the judicial system by creating the appearance of unfairness in the eyes of the jury, the parties, the bar, or the public. *U.S. V. LOCASCIO,* 6 F.3d 924, 933. 934 (2d Cir. 1993). The defendant's waiver cannot cure that problem because the defendant "is not the party prejudiced." *Id.* at 934.

attorney is not called [as a witness], he can still be disqualified, since his performance as an advocate can be impaired by his relationship to the events in question"). Plaintiff requests that Mr. Goheen be disqualified.

<u>/s/Linus L. Baker</u>
Linus L. Baker, KS 18197
6732 West 185th Terrace
Stilwell, KS  66085-8922
Telephone:  913.486.3913
Fax:          913.232.8734
E-Mail: linusbaker@prodigy.net
Attorney for the plaintiff

### CERTIFICATE OF SERVICE

The above was provided notice to all parties entitled to such notice pursuant to the Court's electronic filing system.

<u>/s/Linus L. Baker</u>
Attorney for the plaintiff